JAMES NORRIS PLUMB, APPELLEE, V. YORK COUNTY, APPELLANT.

FILED APRIL 3, 1914.    No. 17,700.

Counties: LIABILITY: SERVICES OF PHYSICIAN. A regularly licensed physician, who is paid a salary of $5 a month for his professional services in treating the inmates of the county poor farm and the county jail, may recover from the county the actual expenses incurred by him in quarantining, fumigating and suppressing an epidemic of smallpox within his county, together with a reasonable compensation for his services.

APPEAL from the district court for York county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*M. M. Wildman,* for appellant.

*W. L. Kirkpatrick* and *George M. Spurlock, contra.*

BARNES, J.

This is an appeal from a judgment of the district court for York county in favor of the plaintiff, Doctor James Norris Plumb, who for more than 20 years has been a duly licensed physician practicing his profession in York county.

It appears that the plaintiff, during the years 1907, 1908, and part of the year 1909, was under contract with York county to give medical attendance to the inmates of the poor farm and the prisoners in the county jail of said county, for which he was to receive the sum of $5 a month. By reason of that employment he was called the county physician. During a portion of that time and subsequent thereto, one Stephen was chairman of the county board of supervisors and of the county board of health. While plaintiff was treating the inmates of the poor farm and county jail, the disease of smallpox became prevalent in said county to such an extent that it soon became epidemic, and the plaintiff was directed by the chairman of the county board and board of health to quarantine all those afflicted with that disease in said county, to fumigate their homes, and take all necessary measures to provide for its suppression. He commenced his services in compliance with that order in the fall of 1908, and continued his work to some time in the summer of 1909. It appears that he was called upon by the county to attend, quarantine and fumigate 132 cases of smallpox. His actual expenses in connection with this service were $260, and he charged the county $726 for his professional services in that behalf. The county board disallowed the plaintiff's claim, and he prosecuted an appeal to the district court. The cause was tried wthout a jury, and the court awarded the plaintiff a judgment for $790.35. The county excepted, and has brought the case to this court by appeal.

The county sought to defeat the plaintiff's claim by contending that Doctor Plumb was a member of the board of health, and therefore he could not have a return of the money expended by him in the suppression of the disease

of smallpox, and neither could he have compensation for his services rendered in that behalf.

It appears that there was no contract entered into between the county and the plaintiff for the services in question, and there was a rule that required members of the board of health to serve without compensation. If the contention of the county is to prevail, then the public is helpless to protect itself against contagious and epidemic diseases. It is easy to understand why the members of the board of public health should receive no compensation for serving thereon, but it would be difficult to understand why a physician should be called upon to serve the county in suppressing an epidemic and contagious disease without compensation. Many cases are cited by appellant to support the contention that an officer must perform all the duties of the office for the compensation provided by law; however, those cases are not decisive of this controversy. The better rule is announced in *Spearman v. Texarkana,* 22 L. R. A. 855 (58 Ark. 348), where it is said: "A physician who is a member of a board of health may recover reasonable compensation for purely professional services which any other physician might render, rendered by him under direction of the board of health without any express agreement for compensation."

In the appeal of *Chairman of Board of Health v. Board of County Commissioners,* 89 Minn. 402, it was said: "A town or village board of health, formed under the provision of the general statutes, one of whose members is a practicing physician and surgeon, may employ such physician to act for the board in all matters requiring such services."

In *Village of St. Johns v. Board of Supervisors,* 70 N. W. 131 (111 Mich. 609), it was held: "The fact that the health officer of a village is a member of the board of health does not preclude such board from fixing his compensation by agreement for services performed by him in preventing the spread of smallpox, and the village may recover the

95 Neb. 42

amount so paid him from the county, where such amount is reasonable."

In *City of Mankato v. County of Blue Earth,* 87 Minn. 425, it was said: "The county is liable, under laws 1902 (Ex. Sess.) ch. 29, for the necessary additional salary paid the local health inspector for extra services in locating and combating contagious diseases."

In *Labrie v. Manchester,* 47 Am. Rep. 179 (59 N. H. 120), it was held: "Where health officers of a city are empowered to remove persons infected with smallpox and helpless to a pest-house, they have implied authority to employ nurses for them at the expense of the city."

Without multiplying the authorities, it may be said that the plaintiff was entitled to recover the expenses actually incurred and paid by him in the suppression of the smallpox epidemic in question, together with a reasonable compensation for his professional services.

The judgment of the district court was right, and it is therefore

AFFIRMED.

SEDGWICK, J., not sitting.